COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Willis and Overton
Argued at Alexandria, Virginia


FUND FOR PRIVATE ASSISTANCE IN INTERNATIONAL DEVELOPMENT
and
DAVID KLINE

v.         Record No. 2243-95-4      MEMORANDUM OPINION[*] BY
                                     JUDGE JERE M. H. WILLIS, JR.
BERNARD NASH, ET AL.                       APRIL 9, 1996


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                   Rosemarie Annunziata, Judge

          R. Frances O'Brien (Flott, Rosner & O'Brien,
          on briefs), for appellants.

          Edward G. Modell for appellees.


     The Fund for Private Assistance in International Development

(PAID) and its President, David Kline, appeal from a final decree

of the trial court finding them in contempt of the trial court's

and commissioner's discovery orders and awarding Bernard Nash and

other creditors (Nash) $22,000 in damages, assessed jointly and

severally against PAID and Kline.  PAID and Kline contend that

the trial court erred (1) in finding them in contempt, (2) in

awarding $22,000 in attorney's fees, and (3) in holding PAID and

Kline jointly and severally liable for the contempt sanction.  We

affirm.

     PAID is a non-profit charity formed under the laws of

Washington, D.C.  Its purpose is to provide financial assistance

---

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

to organizations in underdeveloped countries.  Kline is its President and CEO.  PAID leased office space in Washington, D.C. from Nash.

In March 1994, Nash obtained judgment in the Superior Court of the District of Columbia against PAID and Kline in the amount of $136,000.  Because PAID had moved its office to Vienna, Virginia, Nash docketed the judgment in Fairfax County.  Nash garnished Account No. 100-13-911 at Patriot National Bank (Patriot account).  PAID contended that this account was exempt from garnishment because it did not belong to PAID, but to Bridge International (Bridge).

Bridge is a Virginia non-profit foundation.  Its purpose is to purchase pharmaceuticals and to sell or donate them in underdeveloped countries.  Bridge sublet office space from PAID. In January 1993, Bridge's founder resigned.  In August, 1993, Kline was appointed Bridge's acting executive officer for the sole purpose of maintaining the viability of Bridge.  He became a signatory on the Patriot account from January through July 1994. Bridge was dissolved in December, 1994.

On December 8, 1994, the trial court heard the motion by PAID and Bridge to dismiss the garnishment of the Patriot account.  The court found the account to be subject to garnishment, denied the exemption, and authorized Nash to serve PAID and Kline with debtor's interrogatories inquiring as to funds transferred into and out of the Patriot account.  On

January 31, 1995, Nash, PAID, and Kline appeared before a commissioner for the debtor's interrogatories. PAID produced no documents at that time. It argued that the December 8 order did not require it to reveal sources of funds passing into the Patriot account or the destinations of funds leaving the account, because the donors of those funds had contracts with PAID containing confidentiality clauses.

On February 3, 1995, the trial court ordered the names of the donors to be disclosed under an order of confidentiality and ordered Kline to produce all documents showing the purpose of the transfers from Bridge to PAID. This was memorialized by an order entered February 20, 1995. On February 15, PAID produced the Patriot account bank records but not Bridge's corporate records relating to the transfers from Bridge to PAID. Before the commissioner, Kline composed a list, known as the "A-O list," of all the documents the commissioner ordered PAID to produce.

On March 2, 1995, Nash wrote PAID requesting documents in addition to those on the "A-O list." PAID objected to this further document production. On March 13, 1995, Nash requested the commissioner to find PAID and Kline in contempt. In the commissioner's report of April 7, he recommended that the trial court find PAID and Kline in contempt for "failure to produce those documents listed on the attached list lettered A-O," specifically, "those records relating to Patriot Acct. No. 100-13-911, which have been repeatedly ordered including those

records held by Bridge International."

On April 27, 1995, the trial court conducted a hearing on a contempt rule against PAID and Kline. Immediately prior to the hearing, PAID produced further documents which were responsive to the "A-O list" and the March 2 letter. The trial court found that PAID and Kline "willfully and improperly failed to fully respond to debtor's interrogatories and . . . produce documents required to be produced by the Court's orders, and by the Commissioner's orders." The court held PAID and Kline in contempt and assessed $22,000 in damages against them, jointly and severally. This was the amount that the trial court found to represent the reasonable value of attorney's fees incurred by Nash in requiring PAID and Kline to comply with the trial court's orders.

PAID and Kline contend that the trial court erred in finding them in contempt. Contending that there was no valid decree and no willful violation upon which a finding of contempt could be based, they argue that the December 8, 1994 order was merely directive and provided no basis for contempt. See Winn v. Winn, 218 Va. 8, 10, 235 S.E.2d 307, 309 (1977). They further argue that the February 20, 1995 order is invalid on its face because it requires them to act beyond their power and to produce records of a non-party corporation. However, the trial court rejected this argument. Its order was not appealed. The order was a valid exercise of the trial court's jurisdiction. Disobedience

is not an acceptable substitute for appeal.

"A trial court 'has the authority to hold [an] offending party in contempt for acting in bad faith or for willful disobedience of its order.'"  Alexander v. Alexander, 12 Va. App. 691, 696, 406 S.E.2d 666, 669 (1991) (quoting Carswell v. Masterson, 224 Va. 329, 332, 295 S.E.2d 899, 901 (1982)).  The record supports the trial court's exercise of discretion in finding PAID and Kline, as President of PAID, in contempt of court.  We find no abuse of the trial court's discretion in its award of attorneys' fees.  "[I]t is within the discretion of the trial court to include, as an element of damages assessed against the defendant found guilty of civil contempt, the attorneys' fees incurred in the investigation and prosecution of the contempt proceedings."  Arvin, Inc. v. Sony Corp. of America, 215 Va. 704, 706, 213 S.E.2d 753, 755 (1975) (citation omitted).

Citing Arvin, PAID and Kline contend that the trial court erred in holding them jointly and severally liable for the contempt sanction.  Arvin, however, did not address this point. In Arvin, Arvin, Inc., an authorized dealer of Sony products, consented to a final decree enjoining it from offering Sony trademark goods at less than the prices stipulated in fair trade contracts.  Following entry of the decree, Arvin, Inc. and its president violated the decree 99 times.  The court found Arvin, Inc. "intentionally, willfully, and flagrantly violated the court's injunction."  The court held Arvin, Inc. in contempt and

imposed a sanction of attorneys' fees.  The court did not, however, impose a sanction against Arvin, Inc.'s president even though it found he had personally violated the decree.  The court's authority to impose such a sanction was not an issue in the case.

The record supports the trial court's determination to hold Kline in contempt.  The court's disclosure order was directed to Kline personally.  Kline acted personally in failing to comply with that order.  His conduct was not a mere exercise of his responsibility as president of PAID.  Rather, it represented a personal effort on his part to frustrate the relief granted Nash by the trial court.

The judgment of the trial court is affirmed.

<u>Affirmed.</u>